CITY OF JERSEY CITY, PETITIONER-RESPONDENT, v. SUN HOLDING COMPANY, DEFENDANT-PROSECUTOR.

Argued October 2, 1945—Decided March 22, 1946.

Before Justices DONGES, HEHER and COLIE.

For the prosecutor, *John D. Craven.*

For the respondent, *Charles A. Rooney (John F. Lynch, Jr.,* of counsel).

The opinion of the court was delivered by

HEHER, J. The question for decision is the validity of an assessment laid upon lands designated as Nos. 165-177 Ninth Street, in Jersey City, for the purposes of taxation for the year 1942. The lands were valued by the local assessor at $21,500, and the improvements at $4,500. The latter valuation has not been challenged. On the landowner's appeal, the Hudson County Board of Taxation reduced the land assessment to $6,200. The taxing district appealed; and the Division of Tax Appeals of the State Department of Taxation and Finance fixed the assessment at $17,000. The landowner

thereupon sued out a writ of *certiorari* to review this judgment. The evidence adduced before the state tax tribunal has been supplemented by depositions taken by both parties under a rule entered to that end.

On *certiorari* to review a tax assessment, it is the Supreme Court's function and duty, under *R. S.* 2:81–8, 54:4–58, 54:4–59 and 54:4–62, to evaluate the evidence and determine the facts and the *quantum* of the assessment in accordance with the standard laid down by the State Constitution (article IV, section VII, paragraph 12) and *R. S.* 54:4–23. *Vide Trenton and Mercer County Traction Corp.* v. *Mercer County Board of Taxation,* 92 *N. J. L.* 398; *Pennsylvania Railroad Co.* v. *State Board of Taxes and Assessment,* 103 *Id.* 28. And, under section 2:81–8, *supra,* any party to the cause may use the testimony taken before the state board and introduce additional testimony. Thus, there is a trial *de novo* on such evidence as the parties may choose to submit. It remains to inquire as to which party has the burden of proof in such circumstances.

As this court said in *Colonial Life Insurance Co.* v. *State Board of Tax Appeals,* 126 *N. J. L.* 126, there is at the outset a presumption in favor of the *quantum* of the assessment as made by the local authority; and the *onus* of proof of an excessive valuation is upon the landowner. See, also, *Estell* v. *Hawkens,* 50 *Id.* 122; *Newton Trust Co.* v. *Atwood,* 77 *Id.* 141. It is also the settled rule that, unless the contrary appears, it is to be presumed that the proceedings of a court of general jurisdiction are valid and its judgment factually well based; and the burden of demonstrating error in the adjudication rests upon the contestant. Every intendment is in favor of the record. *Phillips* v. *Longport,* 90 *Id.* 212. And, where jurisdiction affirmatively appears, this principle ordinarily applies with equal force to *quasi*-judicial tribunals. Compare *Roston* v. *Morris,* 25 *Id.* 173; *Demster* v. *Frech,* 51 *Id.* 501; *Lloyd* v. *Richman,* 57 *Id.* 385; *Steinberg* v. *Mindlin,* 94 *Id.* 32. Error in the judgment under review is not to be presumed; it must be affirmatively shown. This is a rule of convenience in judicial administration that has general acceptance. 5 *C. J. S.* 398. 31 *C. J. S.* 792, 795.

And it is the general rule that, on *certiorari*, the burden is upon the moving party to establish his cause by a preponderance of the evidence. *Christie* v. *Mayor and Council of Garfield*, 13 *N. J. Mis. R.* 331. But where, as here, there is a trial *de novo* in the appellate tribunal, the burden of proof rests upon the party who had the affirmative of the issue in the tribunal whose judgment has been appealed, for it is, after all, a new trial of the issues according to the usual mode of procedure in such cases, as if the retrial were had in the lower forum under a remand by the appellate body to that end.

The taxing district assumed the burden of proof in the state tax board and here; and we find that it has been sustained. The evidence in the main consists of radically different conclusions of experts in realty values, based upon what they conceived were comparable sales. Two of the city's experts valued the land at $23,700, on a square foot basis of $1.40; and the third made an appraisal of $22,000, or at the rate of $1.30 per square foot. The landowner's opinion evidence came from two such witnesses, each of whom estimated the value at $6,800, or 40 cents per square foot. This appraisement, by the way, is $600 more than the county board's valuation. Many of the sales cited as comparable are hardly in that category, being remote from the advantages constituting factors of value inherent in the land in question; but such of them as may be reasonably so classified serve to establish the valuation of the state tribunal. And the city is content with that appraisement.

The *locus* is situate in an industrial section, two blocks from the entrance to the Holland Tunnel. It has a frontage of 154.16 feet on the south side of Ninth Street, beginning about 25 feet from the west side of Henderson Street, and a frontage of 30.55 feet on Henderson Street, a main thoroughfare running north and south across Twelfth and Fourteenth Streets, which serve, respectively, as traffic arteries between the tunnel entrance and exit and the Pulaski Highway. The rear of the tract parallels Ninth Street for a distance of 192.8 feet. The total area is 16,952 square feet. Several of the sales invoked by the landowner's experts were not in fact

comparable, either because of remoteness of time or the abnormal conditions attending them. And in some instances there was no allocation of the sales price to the land and improvements. Compare *Newark* v. *Timer,* 12 *N. J. Mis. R.* 125.

The judgment of the state board fixes the value of the land roughly at $1 per square foot. There were comparable sales at the same or a higher rate. For example, in 1942 land immediately adjacent to the *locus* was sold at a price which, fairly allocated to land and buildings, reflects a square foot value of $1.30. And evidence was elicited from one of the city's experts of a sale of a property located eight blocks from the tunnel entrance, not on either the entrance or exit highways thereof, at a price which reasonably indicates a land value of $1 per square foot. There were other fairly comparable sales at a much higher rate; and some, perhaps more advantageously located or remote in point of time, at more than double the square foot value thus assigned to the *locus.* Making due allowance for "corner influences" and other elements of special value, these sales, too, tend to show that the particular lands have not been overvalued by the state board.

The judgment is accordingly affirmed, with costs.